UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| EDDIE W. LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:14-cv-00312-JHE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Eddie W. Lindsey ("Lindsey") seeks review, pursuant 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of Social Security Administration ("Commissioner"), denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Lindsey timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). Additionally, Lindsey has filed a motion requesting oral argument. (Doc. 12). The undersigned has carefully considered the record and, for the reasons stated below, the motion requesting oral argument, (doc. 12), is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Lindsey was sixty years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a high school education. (Tr. 102, 137). His past relevant work includes employment as the owner/operator of a service station, owner/operator of a trucking company,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

and motor vehicle dispatcher. (Tr. 37-40, 150). Lindsey claims he became disabled on March 1, 2010, due to back and knee pain and arthritis in his knee. (Tr. 149).

Lindsey filed his applications for a period of disability and DIB on March 30, 2011. (Tr. 11). The Commissioner initially denied Lindsey application on October 5, 2011, and Lindsey requested a hearing before an ALJ. (*Id.*). After a hearing, the ALJ denied Lindsey's claim on July 6, 2012. (Tr. 8-25). Lindsey sought review by the Appeals Council, but it declined his request on January 30, 2014. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On February 20, 2014, Hicks initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Lindsey met the insured status requirements of the Social Security Act through the date of his decision, and that Lindsey had not engaged in substantial gainful activity from the alleged onset date of March 1, 2010. (Tr. 13). At Step Two, the ALJ found Lindsey has the following severe impairments: degenerative disease of the right knee and degenerative disc disease of the lumbar spine. (*Id.*). At Step Three, the ALJ found Lindsey does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

Before proceeding to Step Four, the ALJ determined Lindsey residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Lindsey has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), lifting and/or carrying up to 10 pounds occasionally

and less than 10 pounds frequently. (Tr. 14-17). He can stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (*Id.*). He would have no limitations with pushing and/or pulling. (*Id.*). He can occasionally balance, stoop, kneel, crouch, and crawl, and can occasionally climb ramps and stairs, but should never perform activities that require the use of ladders, ropes or scaffolds. (*Id.*).

At Step Four, after obtaining testimony from a Vocational Expert, the ALJ determined that Lindsey can perform his past relevant work as a motor vehicle dispatcher, as it does not require the performance of work-related activities precluded by his RFC. (Tr. 17-18). Accordingly,[4] the ALJ concluded Mr. Lindsey was not disabled at any time through the date of decision. (Tr. 18)

### V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Lindsey failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Lindsey's arguments in opposition to the ALJ's decision can be classified as challenging (1) the weight accorded his primary treating physician, and (2) the ALJ's determination he could

---

[4] Having found Lindsey's impairments did not prevent him from performing his past relevant work, the ALJ did not perform Step Five of the sequential evaluation process. (Tr. 18).

perform his past relevant work as a motor vehicle dispatcher. (*See* doc. 11). Specifically, Lindsey argues the ALJ failed to give proper weight to his primary treating physician's opinion (Dr. Morrow) that Lindsey was totally disabled and erred by using information outside the record to disqualify Dr. Morrow's testimony. (*Id.* at 6). Second, Lindsey argues the ALJ incorrectly determined he could perform his past relevant work as a motor vehicle dispatcher because his work as a dispatcher was only a small part of his job as owner/operator of the trucking company. (Doc. 11 at 10). Lindsey further claims the ALJ erred when he did not use the Medical-Vocational Grid Rules (the "Grids") in examining his purported disability. (*Id.*)

### A.     Treating Physician's Diagnoses

Lindsey contends the ALJ improperly evaluated the opinion of Dr. Morrow, his treating physician. (Doc. 11 at 6). Because Lindsey's patient records covering his treatment with Dr. Morrow were destroyed by a tornado in April 2011, Dr. Morrow provided a letter in which he provides his account of Lindsey's condition. (Tr. 249). Specifically, Dr. Morrow recalls that Lindsey has been a patient of his for several years and asserts he could discuss Lindsey's condition without his chart. (*Id.*). Based on his previous evaluations, Dr. Morrow describes Lindsey's primary problems as osteoarthritis of the spine and bilateral lumber radiculopathy, and notes Lindsey had a recent emergency coronary artery bypass grafting. (*Id.*).

Specifically, Dr. Morrow states Lindsey has lower back pain, which radiates into both legs, and that Lindsey had a total knee replacement. (*Id.*). As a result of the issues in Lindsey's back and knees, Dr. Morrow concludes Lindsey is limited in the following ways: (1) he is unable to stand for any period of time; (2) he cannot walk any significant distance without increasing pain; and (3) he suffers from intermittent numbness in his legs. (*Id.*). According to Dr. Morrow, these ailments make it difficult for Lindsey to perform activities of daily living, limiting his

ability to bend, walk, climb, crawl, or else to do rapid repetitive movements or repetitive job requirements. (*Id.*). Therefore, Dr. Morrow concluded the severity of Lindsey's ailments renders him unable to return to gainful employment. (*Id.*).

The ALJ gave Dr. Morrow's opinion in the RFC evaluation limited weight. (Tr. 16). The ALJ noted there was no evidence showing Lindsey experienced significant functional limitations and that Dr. Morrow's opinion that Lindsey could not return to gainful employment was a determination of disability reserved to the Commissioner. (*Id.*).

A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to give a treating physician's opinion something less than substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Additionally, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Here, the ALJ had good cause to discount Dr. Morrow's opinion. First, Dr. Morrow's opinion is not sufficiently tied to any objective or clinical findings. (Tr. 249); *see* 20 C.F.R. § 404.1527(c)(3); *Crawford*, 363 F.3d at 1159-60. Although Dr. Morrow listed Lindsey's diagnoses, diagnoses alone do not reveal the extent to which the condition limits an individual's ability to work. *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). And, Dr. Morrow's opinion that Lindsey cannot return to gainful employment is not entitled to any deference because such opinions are within the sole province of the ALJ.

Second, Dr. Morrow's opinion is inconsistent with the other evidence in Lindsey's medical record. While records from Southern Orthopedics in July 2010 did show severe medial compartment and patellofemoral anthropathy in Lindsey's leg, the records also note that by August 2011, Lindsey had good range of motion with only minimal effusion and excellent

stability. (Tr. 190-91). Over the couple years leading up to Lindsey's knee replacement surgery, the record indicates he was ambulatory and able to continue on working. (Tr. 234). Following Lindsey's knee surgery, he participated in rehabilitation and reported significant improvement, with a pain level of only 2/10. (Tr. 214). With respect to Lindsey's back pain, an x-ray of his lumbar spine taken in August 2011, showed only minimal osteoarthric changes at L4, L5, and S1. (Tr. 221).

Consultative physician Dr. Syed Bhat's physical examination in June 2011, further supports the ALJ's decision. Dr. Bhat's cardiovascular examination revealed no bruits and no murmur, gallop, rubs or clicks, and heart ausculation revealed normal S1 and S2. (Tr. 209). Moreover, he rated Lindsey's muscle strength at 5/5 and found his muscle tone was normal. (*Id.*). Dr. Bhat further noted Lindsey's squatting was limited to 50 degrees due to right knee pain, but his heel and toe weight bearing was normal. (*Id.*). Lindsey's straight leg raising was limited to 70 degrees on his right side due to back pain, but it was reasonably maintained on the left side. (*Id.*). Additionally, his extremities showed no cyanosis, clubbing, or edema. (*Id.*). While some limitation in range of motion testing was noted in his lumbar spine and knee, other range of motion testing was normal. (Tr. 205-06). Dr. Bhat confirmed Lindsey's right knee pain, with moderately severe degenerative disease, lumbago, hypertension, carotid artery disease, and peripheral arterial disease; however, he did not determine Lindsey would be significantly limited by these impairments. (*Id.*). Given the foregoing, there is substantial evidence to support the ALJ's conclusion that Lindsey's limitations are not as disabling as Dr. Morrow states and good cause existed for the ALJ to give only limited weight to his opinion.

Lindsey also argues the ALJ erred in noting that, "Dr. Morrow has been a well-known supporter of his patient's disabilities," and thus improperly discounted Dr. Morrow's opinion

9

based upon personal bias. (Tr. 16).  This argument lacks merit.  The ALJ specifically stated he did not discredit Dr. Morrow's opinion on this ground alone, but rather because the objective evidence did not support the opinion. (*Id*).  To the contrary, Dr. Morrow's opinion is contradicted by evidence from other treating physicians (tr. 190-91, 241, 221, 234), and Dr. Bhat's consultative physical examination, (tr.205-09).  Regardless of whether Lindsey disagrees with the ALJ's statements concerning Dr. Morrow, the record supports the ALJ's finding of good cause for giving Dr. Morrow's opinion limited weight.

### B.     Past Relevant Work as Dispatcher

Lindsey contends the ALJ incorrectly determined he could perform his past relevant work as a dispatcher. (Doc. 11 at 10).  Specifically, Lindsey argues his work as a dispatcher constituted only a small part of his job as owner/operator of the trucking company. (*Id.*).  In analyzing past relevant work, the ALJ determined Lindsey has the RFC to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).  Under the fourth step of the sequential evaluation process, past relevant work means work performed, either as actually performed or as it is generally performed in the national economy, within the last fifteen years or fifteen years prior to the onset of the purported disability.

The ALJ properly relied on the testimony of the vocational expert ("VE") in reaching his decision. (Tr. 37-40); *see* 20 C.F.R. § 404.1560(b)(2); *see also* Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (indicating that the Eleventh Circuit is predisposed to accept the testimony of a VE). The VE testified Lindsey has worked as: (1) an owner/operator of a service station, a medium and skilled job; (2) a motor vehicle dispatcher, a sedentary and skilled job; and (3) an owner/operator of a trucking company, a medium and semi-skilled job. (Tr. 17).  The ALJ determined that within the last fifteen years, Lindsey primarily transitioned into the sedentary

position of motor vehicle dispatcher, and therefore motor vehicle dispatcher is the appropriate past relevant work. (*Id.*)

The record supports the ALJ's conclusion Lindsey performed work as a motor vehicle dispatcher within the last fifteen years. According to Lindsey's testimony, when he first started his business he only possessed one truck, which he drove himself. (Tr. 40). As the business grew, he "had to quit driving and stay in the office the whole time." (Tr. 157). This sentiment is supported in the work history report, where Lindsey specifically states he "worked in office dispatching trucks." (*Id.*). The VE further testified the role of truck driver appears to predate the fifteen-year period, and Lindsey agreed in part, stating that it was "pretty close." (Tr. 40). The record provides substantial evidence that Lindsey had past relevant work as a motor vehicle dispatcher and that he could perform this work as actually and generally performed.

Lindsey further contends the ALJ erred in not considering rule 201.06 of the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt., P, app. 2 (the "Grids"). (Doc. 11 at 10). The Grids take administrative notice at step five of the sequential evaluation process, and involve evaluating the number of unskilled jobs at the various exertional levels that exist throughout the national economy. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §200.00(b). Since the ALJ properly determined Lindsey could perform his past relevant work at step four of the sequential evaluation process, the ALJ did not need to determine the availability of jobs Lindsey could perform other than his past relevant work.

    **C.**    **Request for Oral Argument**

The record adequately presents the facts and legal arguments, and the undersigned does not believe oral argument would aid in the resolution of any of the issue before the Court. Accordingly, Lindsey's request for oral argument, (doc. 12), is **DENIED**.

## VI.     Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Lindsey's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 18th day of August 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE